UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Nicholas Dennen,

Plaintiff,

vs. ORDER

City of Duluth, S.R.
Peterson, John Does,

Defendants. Civ. No. 00-2731 (PAM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 19th day of February, 2002.

## I. Introduction

On February 7, 2002, the Court heard argument on the Plaintiff's Motion to Amend the Scheduling Order, and his Complaint, as well as the Defendants' Motion to Amend the Scheduling Order, and to Compel Discovery. Later, on that same day, by telephone, we also heard the Defendants' informal Motion for a Protective Order. At the time of both Hearings, the Plaintiff appeared by Paul D. Peterson, Esq., and the Defendants appeared by M. Alison Lutterman, Deputy Duluth City Attorney.

For reasons which follow, we deny the Plaintiff's Motions, as well as the Defendants' Motion for a Protective Order, but we grant the Defendants' Motion to Amend the Scheduling Order and their Motion to Compel Discovery, in part.

35

FILED FEB 19 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. Discussion

### A. The Defendant's Motion to Compel, and to Amend the Scheduling Order.

The Defendants have moved to not only compel outstanding discovery from the Plaintiff, but also to amend the deadline, in the current Scheduling Order, for their expert witness disclosures. By our Order dated October 11, 2001, the Defendants' expert witness disclosures were due on January 15, 2002. See, Docket No. 20. However, since, according to the Defendants, the Plaintiff failed to produce all of the information which had been relied upon by his experts -- whose opinions were produced to the Defendants on about November 30, 2001 -- the Defendants maintain that there were unable to complete their expert disclosures by the noted deadline. As a result, the Defendants seek not only to compel the requested discovery responses, but they also seek to extend the deadline for their expert disclosures until thirty days after they receive the information that they have requested from the Plaintiffs.

Specifically, the Defendants complain that, when they received the Plaintiff's expert disclosures on November 30, 2001, they discovered that the Plaintiff's experts had relied upon materials which the Plaintiff had not previously produced to the Defendants. Among those materials were the results of a variety of tests that were administered by the Plaintiff's rehabilitation counselor, Dr.

Philip Haber, that were discussed in his expert report, and that were requested of the Plaintiffs as early as December 10, 2001. The Defendants assert that the Plaintiff has continued in his refusal to provide the requested information.[1]

In addition, the Plaintiff has identified a Dr. Montgomery as one of the Plaintiff's treating physicians, who will provide testimony concerning his neuropsychological testing of the Plaintiff, but Dr. Montgomery's report discloses that his evaluation is not complete, and may well be augmented at some undisclosed time in the future. See, Ex. 2 to Affidavit of Lutterman, at 2-3 ("Dr. Montgomery is in the process of completing his evaluation of the situation involving [the Plaintiff] and so these opinions may be supplemented or further explained as additional information is reviewed or becomes available through discovery."). As a consequence, the Defendants request that the Plaintiff be compelled to produce the raw testing data of Dr. Haber, as well as a final

[1]In their Motion, the Defendants further complain that the Plaintiff has identified a police tactician as an expert, and that the expert has provided an opinion as to the source of some of the Plaintiff's injuries, and that, as a part of that opinion, he relied on photographs which where not previously disclosed to the Defendants. We are now informed that the photographs were disclosed to the Defendants on or about January 10, 2002, see, Affidavit of Paul D. Peterson, at ¶6, and are, therefore, no longer in dispute. Nonetheless, the Defendants underscore that the delay in the production of those photographs necessarily stalled the Defendants efforts in garnering their own expert opinion evidence.

report from Dr. Montgomery and, as we have noted, an extension of their expert disclosure deadline.

As for the testing data of Dr. Haber, the Plaintiff advises that this "data is in the process of being forwarded by Dr. Philip Haber directly to the Defendant's [sic] vocational expert who has been identified in this matter." See, Affidavit of Paul D. Peterson, at ¶6. The Plaintiff goes on to state, however, that "Dr. Haber cannot ethically release any raw data from psychological testing performed in connection with his expert evaluation in this case and therefore his office will not disclose the information." Id. The Plaintiff has pointed to no controlling case, or statutory authority, that buttresses his assertion that Dr. Haber can unilaterally select portions of the data, which he employed in forming his opinions, to disclose to those who would cross-examine him on those opinions, nor are we aware of any such authority.[2] Rather, as we stated at the Hearing, if Dr. Haber is to testify before a Jury, then the Defendants should be positioned so as to conduct a responsible exploration of the information available to Dr. Haber.

[2]Clearly, as Dr. Haber was obtained as an expert in this case, the Plaintiff can assert no medical privilege over the data. Moreover, even if he could claim such a privilege, there is no dispute that the Plaintiff has placed his mental condition into controversy, and therefore must turn over any medical evidence which would otherwise be privileged. See, O'Sullivan v. State of Minnesota, 176 F.R.D. 325, 327 (D. Minn. 1997).

While we understand the Plaintiff to assert that the Defendants' vocational expert is not qualified to read and interpret the referenced psychological testing data, such a parochial view of discovery is inconsistent with the Federal Rules of Civil Procedure, which are intended to afford litigants equal access to information that is not legally privileged. Here, the Plaintiff baldly claims privilege, but offers nothing to substantiate the claim. If the Plaintiff is concerned about the confidentiality of the data in question, then we encourage the parties to draft a Protective Order for our review, which will maintain the sensitivity of the information in question, without depriving the Defendants of an opportunity to meaningfully review the data. Therefore, we grant this aspect of the Defendants' Motion to Compel.

Next, as to Dr. Montgomery, the Plaintiff explained at the Hearing that Dr. Montgomery's report contains his ultimate conclusions, and that his comment, in that report, that he may supplement it at a later time represents no more than the reality that a further examination of the Plaintiff may cause the doctor's currently expressed opinions to change. We find the reality, that has been expressed by Dr. Montgomery, to have frequent expression in civil litigation, but its phraseology understandably caused concern for the Defendants. If, as the Defendants fear, Dr. Montgomery ultimately elects to opine on areas outside of the opinions he has

expressed in his report, then the Defendants will have recourse through a Motion in limine, or by other equitable means. Accordingly, we deny this aspect of the Defendants' Motion to Compel, as moot.

Finally, given the delays in the Plaintiff's discovery responses, the Defendants have shown good cause for an extension of their expert disclosure deadline. See, Rule 16(b), Federal Rules of Civil Procedure, and accompanying Advisory Committee Notes. The parties advised the Court, at the Hearing, that such an extension will not affect any of the other deadlines in the case, as the Defendants have filed a Motion to Dismiss, and for Summary Judgment, which will not be fully briefed until March 21, 2002. Moreover, the parties assure us that the Defendants' expert disclosures are not essential for dispositive Motion purposes. Therefore, we grant the Defendants' Motion to Amend the Scheduling Order, and direct the Plaintiff to immediately forward Dr. Haber's raw testing data to the Defendants. Within thirty days thereafter, the Defendants shall produce their remaining expert disclosures.

B. The Plaintiff's Motion to Amend the Scheduling Order, and to Amend the Complaint.

1. Standard of Review. In support of his Motion to Amend his Complaint, the Plaintiff has largely framed his argument

in the setting of Rule 15(a), Federal Rules of Civil Procedure, which provides, where pertinent, as follows:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires.

In construing this Rule, the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also, Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).

"[A]lthough we begin with a presumption of liberality, an amendment to a pleading can be successfully challenged on grounds of futility, if the claims created by the amendment would be unable to withstand a Motion to Dismiss." Ulrich v. City of Crosby, 848 F. Supp. 861, 877 (D. Minn. 1994), and cases cited therein. In sum, "the right to amend the pleadings is not absolute," and "the granting of a Motion to amend the pleadings is vested in the sound discretion of the Trial Court." White Consolidated Industries, Inc. v. Waterhouse, 158 F.R.D. 429, 434 (D. Minn. 1994); see also,

Upsher-Smith Laboratories v. Mylan Laboratories, 944 F. Supp. 1411, 1442 (D. Minn. 1996).

Where, as here, the deadline for the amendment of pleadings has long since expired, the propriety of the Motion for leave to amend "is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure." Alholm v. American Steamship Co., 167 F.R.D. 75, 77 (D. Minn. 1996). As we have recently reiterated:

> Rule 16(b), Federal Rules of Civil Procedure, provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." The "good cause" standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes--1983 Amendment; see also, Julian v. Equifax Check Services, Inc., 178 F.R.D. 10, 16 (D. Conn. 1998). It hardly bears mention, therefore, that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party. Luigino's Inc. v. Pezrow Cos., 178 F.R.D. 523, 525 (D. Minn. 1998).

Scheidecker v. Arvig Enterprises, Inc., 193 F.R.D. 630, 631-32 (D. Minn. 2000), quoting Archer Daniels Midland v. Aon Risk Services, Inc., 187 F.R.D. 578, 581-582 (D. Minn. 1999).[3]

Indeed "[w]e doubt that it can be seriously questioned that '[a]dherence to reasonable deadlines is * * * critical to maintaining integrity in court proceedings.'" Alholm v. American Steamship Co., supra at 79, quoting Rouse v. Farmers State Bank of Jewell, supra at 1199.

B. Legal Analysis. The Plaintiff seeks to amend his Complaint in order to clarify that his civil rights claims against the City are based, at least in part, on the City's failure to establish legitimate policies regarding the use of force by its officers and/or the proper use and deployment of police dogs, as well as a claim of liability under Minnesota Statutes Section 347.22.[4] The

---

[3]Local Rule 16.3 serves to further reinforce the need for a party to show good cause, when seeking to extend the deadline for amending the pleadings. The Advisory Committee Notes to Local Rule 16.3 explain that the Rule is "* * * intended to discourage modifying pretrial schedules unless good cause has been shown." Local Rule 16.3, Advisory Committee Notes.

[4]Minnesota Statutes, Section 347.22 provides as follows:

> If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term "owner" includes any person harboring or keeping a dog but the owner shall be primarily liable.

(continued...)

Defendants object to this amendment, and claim that it is not only untimely, but also futile.

The original Complaint in this case was filed on December 19, 2000. At that time, the Plaintiff was being represented by Jerry Strauss, Esq. Thereafter, on April 4, 2001, we issued a Scheduling Order, which set the deadline, for amending the pleadings, at May 1, 2001. In September of 2001, the Plaintiff alerted the Court, for the first time, that he could not comply with the Scheduling Order, because of health problems that Mr. Strauss had been experiencing. The Plaintiff requested that we extend the pretrial deadlines as substitute counsel had been retained. At no time, however, did the Plaintiff intimate that he needed any extension in the pleading deadline, nor was any then requested.

On October 11, 2001, we granted the Plaintiff's requested extension of the deadlines for expert disclosures, discovery, non-dispositive and dispositive Motions, as well the "Trial-ready" date. The Plaintiff's current counsel, Paul D. Peterson, appeared at that Hearing. Of note, the Plaintiff's expert disclosures were due by no later than November 30, 2001. Soon thereafter, the District Court also established a schedule for the Plaintiff to re-

(...continued)
The term "dog" includes both male and female of the canine species.

spond to the Defendants' previously filed Motion to Dismiss, and for Summary Judgment, with the Plaintiff's response being due on March 7, 2002, and the Defendants' reply on March 21, 2002.[5]

On January 22, 2002, the Plaintiff filed his Motion to Amend his Complaint, and the conjoined Motion to Amend the Scheduling Order so as to allow an Amended Complaint. Apart from conclusory assertions, the Plaintiff does not suggest any good cause for the late attempt at amendment, other than the previously asserted fact that prior counsel for the Plaintiff was ill for some period of time. At most, he claims that the Plaintiff's expert has now reviewed the policies of the Defendant City, as well as the deposition of the police officer, whose conduct is at issue, and has determined that the training and policies of the City were inadequate, and contributed to cause the violations of the Plaintiff's civil rights that the Plaintiff claims to have occurred.

In addition, the Plaintiff emphasizes that the Defendant City's Motion to Dismiss, and for Summary Judgment, seeks a favor-

---

[5]Although it is not apparent, from the file, when the Defendants' Motion to Dismiss, and for Summary Judgment, was served on the Plaintiff, it was clearly either before, or very soon after, we heard argument on the Plaintiff's previous Motion to Amend the Scheduling Order, which was held on October 11, 2001, since, by October 15, 2001, the Plaintiff was already asking the District Court for an extension of the briefing schedule as to those Motions. See, Docket No. 21. Thus, we find no explanation for the Plaintiff's failure to file his Motion to Amend his Complaint well before now.

able entry of Judgment, on the alleged civil rights violations, in part because the Plaintiff has not alleged, with sufficient particularity or clarity, the claims that he has asserted against the City. The Plaintiff claims that this amendment would cure the technical problems with his prior pleading, and would not cause any prejudice to the Defendants. The Plaintiff does not so much as intimate why he did earlier raise a claim under Minnesota Statutes Section 347.22.

The Plaintiff has wholly failed to demonstrate the "good cause" necessary for an amendment of the Scheduling Order. See, Rule 16(b), Federal Rules of Civil Procedure. First, with respect to his proposed claim under Section 347.22, this allegation could have been asserted at the time of the Plaintiff's original Complaint. The Plaintiff does not contend that the Statute was newly enacted, or that newly discovered facts have drawn the statutory cause of action to his attention. While we are sympathetic to the difficulties raised by the illness of the Plaintiff's previous legal counsel, that was the predicate for our earlier extension of the pretrial deadlines, and the persuasiveness of that excuse has now been exhausted. Moreover, to allow such an untimely amendment would, in practical effect, return this case to its infancy, and require additional discovery, and briefing, to be completed. While the Plaintiff denies any such practical effect, and suggests that

he would not oppose expedited briefing on that issue, the Plaintiff is only one part of the equation, and the Defendants do not share his optimism concerning a timely submission of dispositive briefs on a claim that could have been originally pled. Therefore, as to the proposed claim under Minnesota Statutes Section 347.22, we deny the Plaintiff's Motions as without a requisite showing of "good cause."

We also deny the Plaintiff's asserted attempt to clarify his previously pled claim concerning alleged deficiencies in the Defendant City's policies and training. First, the amendment is not merely a "clarification," as it attempts to elude the arguments that the Defendants have raised in its pending dispositive Motions, which would cause a rebriefing of those arguments as well. Moreover, the Plaintiff has known about the asserted deficiencies in his pleading since, at least, early October of 2001, which appears to be when the Defendants served their Motion to Dismiss, and for Summary Judgment. Yet, he awaited the passage of another three months to bring the claimed need to amend his Complaint to our attention. According to the Plaintiff, he could not file this Motion to Amend until he received his expert's report, which clarified that the City's training policies were inadequate, and fostered the constitutional violations of which he complains, but his expert's report was received, it appears, on or before November

30, 2001. Nonetheless, the Plaintiff waited another month and one half to seek leave to amend his Complaint. In truth, Rule 11, Federal Rules of Civil Procedure, would have required the Plaintiff to complete a diligent survey of the City's policies, which deal with the deployment of dogs, at some time prior to the filing of his original Complaint. In sum, we conclude that the Plaintiff's attempted "eleventh-hour" amendment is untimely, and granting the Motion would be prejudicial to the Defendants. Therefore, we deny, as well, this aspect of the Plaintiff's Motions to amend the Scheduling Order, and his Complaint.[6]

C. The Defendants' Motion for a Protective Order.

During the afternoon of February 8, 2002, the parties were involved in the deposition of Officer Brad Wick ("Wick"),

---

[6]We are also mindful of the Defendants' concern with respect to two of the Plaintiff's current causes of action -- intentional infliction of emotional distress, and assault and battery -- which have been a part of this case since the beginning, and which, the Defendants contend, are barred by the Statute of Limitations. While we have nothing pending before us on those claims, other than the Defendants' objection to their continued presence in the action, it does appear that prior counsel for the Plaintiff had agreed to dismiss those claims, on limitations grounds, but never executed the proposed stipulation to that effect. We understand that the Plaintiff's current counsel is exploring whether the pertinent Statute was tolled for one reason or another, but it would make no sense to burden the parties, as well as the Court, with the consideration of legal issues which are frivolous, if the Statute of Limitations has not been tolled, and the actions are plainly untimely. Apparently, the Plaintiff is more attentive to the addition of new claims, than the pruning of claims which might not be well-founded.

who had limited involvement in the incident which precipitated this lawsuit. Apparently, however, Wick had viewed a bite wound, which had been inflicted upon the Defendant Peterson's daughter, by the police dog -- Citus -- who allegedly bit the Plaintiff. Citus bit Peterson's daughter after the incident involving the Plaintiff, while the dog was off-duty, and was at his home. It was determined that the circumstances surrounding the bite involved food. None-theless, the City decided to arrange for a new dog for Peterson.

At the deposition, the Plaintiff began asking Wick questions about the bite marks on Peterson's daughter, at which time the Defendants objected on the basis of relevance, thereby seeking a Protective Order under Rule 26(c)(4), Federal Rules of Civil Proce-dure. In the Defendants' opinion, the questioning of Wick, who was not present when Citus bit Peterson's daughter, is not relevant to this case, as the bite occurred after the incident involving the Plaintiff, and in a different circumstance, as Citus was off duty, and at Peterson's home. In contrast, the Plaintiff believes the appearance and presentation of the wound on Peterson's daughter is relevant, in order to test the credibility of the Defendants' ex-pert, who has opined that a bite in the two different situations would look different from one another.

We conclude that this controversy is governed by Rule 407, Federal Rules of evidence, which provides as follows:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent remedial measure is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purposes, such as proving ownership, control, feasibility of precautionary measures, if controverted, or impeachment.

Here, although we believe the evidence may prove to be of limited relevance, the Plaintiff is seeking to ascertain this information for such impeachment, if any at all, that the information may provide as to the opinions of the Defendants' expert. Such information is relevant, as allowed by Rule 407, as we conclude that the information "is reasonably calculated to lead to the discovery of admissible evidence." See, Rule 26(b)(1), Federal Rules of Civil Procedure. Therefore, we deny the Defendants' Motion for a Protec-tive Order.

NOW, THEREFORE, It is --

ORDERED:

1. That the Defendants' Motion to Compel [Docket No. 24] is GRANTED, in part, as more fully detailed in the text of this Order.

2. That the Defendants' Motion to Amend the Scheduling Order [Docket No. 24] is GRANTED, to the extent detailed in the text of this Order.

3. That the Plaintiff's Motion to Amend the Scheduling Order [Docket No. 27] is DENIED.

4. That the Plaintiff's Motion to File an Amended Complaint [Docket No. 27] is DENIED.

5. That the Defendants' informal Motion for a Protective Order is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE